Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 94 C 6151 | **DATE** | 3/28/2002 |
| **CASE TITLE** | | C.L.U.B., et al. v. City of Chicago | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiffs' Motions to Alter or Amend the Court's Judgment (#169-1)(#169-2)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the attached reasons, the Court DENIES Plaintiffs' Motions to Alter or Amend the Court's Judgment (#169-1)(#169-2).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 29 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 169 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| JH | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

C.L.U.B. (Civil Liberties for )
    Urban Believers), Christ )
    Center, Christian Covenant )
    Outreach Church, Christian )
    Bible Church, Mount Zion Church, )
    Plaintiffs, )
                                 )
                                 )   CASE NO. 94 C 6151
v.                             )
                                 )   JUDGE WILLIAM J. HIBBLER
CITY OF CHICAGO, )
    Defendant. )

**DOCKETED MAR 29 2002**

## MEMORANDUM AND ORDER

The Court has before it Plaintiff's Motion to Alter or Amend the Judgement of this Court. The motion is fully briefed and thus ready for adjudication. For the following reasons, the Court DENIES Plaintiff's Motion to Alter or Amend the Judgment.

The association Civil Liberties for Urban Believers (C.L.U.B.) and some of its member churches ("Plaintiffs") filed suit against the City of Chicago ("Defendant"). Plaintiffs claim Defendant's zoning policy and procedures restricted Plaintiffs' First Amendment rights to the free exercise of religion, freedom of speech and freedom of assembly and denied equal protection and due process to Plaintiffs. After over seven years of litigation and numerous opinions issues by both the District Court and Circuit Court, this Court granted Defendant's motion for summary judgment and disposed of the case. *C.L.U.B. v. City of Chicago*, 157 F.Supp.2d 903 (N.D.Ill. 2001). Plaintiff has submitted the present motion to

1



revisit and challenge the Court's ruling and opinion.[1]

### Standard of Review

Rule 59(e) motions for reconsideration serve a limited function. Under Rule 59(e), the moving party must clearly establish: a significant change in the law has occurred; the court misunderstood the party; the court made its decision outside the adversarial issues presented to the court; the court made an error of apprehension, not reasoning; or significant new facts have been discovered. Fed. R. Civ. P. 59(e); *Russell v. Delco Remy Div.*, 51 F.3d 746, 749 (7th Cir. 1995)(citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). In general, motions for reconsideration cannot be used to introduce new theories or rehash old arguments. *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id.* (citation omitted).

### Analysis

<u>The Pertinence of the Pre-February 2000 Zoning Plan</u>

Plaintiffs argue the Court failed to address their Equal Protection claims as applied to Defendant's pre-February 2000

---

[1] In its present motion, Plaintiff addressed the private nature of C.L.U.B.'s membership and mentioned the history of property ownership of one of its churches. This information does not change the Court's analysis and application of the relevant law in the present case.

2

zoning scheme. However, the Court clearly stated in its order that Plaintiffs' Equal Protection claim is evaluated under a "rational basis" standard. *C.L.U.B.*, 157 F.Supp.2d at 909-912. The pre-Amendment zoning scheme complied as a whole with the Equal Protection Clause of the Fourteenth Amendment because the scheme's elements were supported by reasonable distinctions between churches and the other allegedly similar uses. *Id.* at 912. Thus, to the extent it is relevant to the present discussion, the prior zoning plan was constitutional.

### Permitted Uses in Manufacturing Zones

Plaintiffs allege the post-February 2000 zoning scheme continues to exclude churches from light manufacturing districts ("M-1") while allowing community centers as permitted uses in these areas. Defendant has established the February 2000 Chicago City Council amendments ("MA-59"), which revised the City's Zoning Ordinance at issue, changed the legal status of "Municipal and Privately-Owned Recreation Buildings or Community Centers" by removing them as permitted uses in manufacturing districts, including M-1.[2] Thus, under the current zoning scheme, churches are treated no worse than a similarly situated non-religious assembly.

---

[2] The Chicago City Council has corrected a previous clerical error in the record to now state unambiguously that MA-59 eliminated recreation buildings and community centers as permitted uses in "M" zones. Since February 2000, Defendant's Zoning Administrator has enforced the amendment as intended and passed, and he corrected the technical oversight.

3

Religious Land Use and Institutionalized Persons Act §2(b)(1)

Plaintiffs maintain the Court failed to specifically address their arguments regarding Section 2(b)(1) of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C.A. §2000cc, et seq..[3] Section 2(b)(1) prohibits Defendant from treating Plaintiffs "on less than equal terms with a nonreligious assembly or institution." As the Court stated in its opinion, the zoning plan does not violate Section 2(b)(1) because Defendant's "zoning scheme must be viewed as a whole, with attention focused as to how the pieces combine to form the complete zoning scheme"; as such, the scheme treats Plaintiffs as well, if not better than similar, non-religious assembly uses. *C.L.U.B.*, 157 F.Supp.2d at 912. For example, unlike comparable non-religious uses, churches operate in residential ("R") districts as a permitted use and enjoy a unique application process which automatically approves their applications for special use pending for more than 120 days. See *Chicago Zoning Ordinance*, Municipal Code of Chicago, Title 17, Art. 11.10, §11.10-7.5 (2002).

---

[3] The Court clearly stated Section 2(a)(1) of RLUIPA is inapplicable to the present matter due to Section 5(e), which allows a governmental body to avoid heightened scrutiny if the body removes any substantial burden. As the House Committee of the Judiciary stated when it presented RLUIPA as a bill, "Section 5(e) emphasizes that this Act does not require states to pursue any particular public policy or to abandon any policy, but that *each state is free to choose its own means of eliminating substantial burdens on religious exercise.*" H.R. Rep. No. 106-219, at 30 (1999)(emphasis added). Here, Defendant's February 2000 amendments to the Zoning Ordinance adjusted Defendant's policies concerning special use permits and districts to eliminate any alleged burden.

4

## Buckhannon and Claims for Money Damages

The Court granted Plaintiff's motion to submit supplemental authority, *Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, et al.*, 121 S.Ct. 1835 (2001), in support of the present motion to reconsider. In *Buckhannon*, the Supreme Court stated a court may award statutory attorney fees to the prevailing party who secures a judgment on the merits or court-ordered consent decree; as a result, courts may no longer follow the "catalyst rule," wherein a court may award fees to a plaintiff who secures a voluntary change or cessation in the defendant's conduct. *Id.* at 1838-1843. Plaintiff asserts *Buckhannon* requires the Court to address the constitutionality of Defendant's pre-February 2000 zoning scheme to determine if Plaintiffs are entitled to monetary damages, attorneys fees and costs. *Id.* at 1842-43. However, as stated above and in the Court's earlier opinion, the Court has already determined the pre-February 2000 scheme met all constitutional tests.

Further, Plaintiffs lack standing to seek monetary damages regarding the pre-February 2000 zoning plan. First, Judge Andersen previously determined C.L.U.B. is an association and thus lacks standing to seek monetary damages on behalf of individual churches. *C.L.U.B. v. City of Chicago*, No. 94 C 6151, 1996 WL 89241, at *14 (N.D.Ill. Feb.27, 1996)("C.L.U.B. may have associational standing to pursue forms of prospective relief which do not require

5

individualized proof but may not pursue money damages."); *see also Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 863 (7th Cir. 1996); *Sanner v. Board of Trade of City of Chicago*, 62 F.3d 918, 923 (7th Cir. 1995); *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 650 n.5 (2nd Cir. 1998).

Second, the remaining individual church Plaintiffs were not injured by the specific provisions of the zoning scheme they have challenged. Their monetary damage claims are founded upon the fact that, unlike the post-February 2000 scheme, the pre-February 2000 zoning scheme allowed additional non-religious assembly uses in "M" zones; the individual churches maintain they suffered specific monetary injuries as a result of this unconstitutional difference in the previous plan. However, Plaintiffs' alleged injuries cannot be traced to the section of the pre-February 2000 zoning scheme that excluded churches from "M" zones. Rather, Plaintiffs have alleged they were damaged by the scheme's requirement that they obtain special use permits to operate in "B" and "C" districts and not the portion of the old ordinance that excluded churches from "M" zones. The requirement to obtain a special use permit to operate in "B" and "C" zones was not altered by the February 2000 amendments and thus remains in the current scheme; moreover, the Court upheld the special use permit requirements in its March 30 opinion. *C.L.U.B.*, 157 F.Supp.2d at 912.

If the remaining church Plaintiffs' injuries were causally

6

related to the prior "M" classification, then these parties might have claims for money damages regarding the pre-February 2000 zoning scheme. However, Christ Center, Christian Covenant Outreach Church, Christian Bible Center, and Mount Zion Church were not legally injured by the exclusion of churches from "M" zones. Instead, each church has alleged it was injured by the requirement that it obtain a special use permit to operate in "B" and "C" districts.[4] See Pls.' Aff., Ex. A-2,3,5,7; Pls. Fourth Am. Compl. Plaintiffs identified properties in "B" and "C" districts in which they were interested and they maintain the permit requirement discouraged them from buying those properties. Plaintiffs have merely alleged abstract and conjectural claims of hardship as a result of the pre-February 2000 "M" classifications and have failed to allege that, but for the exclusion of churches from "M" districts, they would have purchased specific properties.[5] See Love Church v. City of Evanston, 896 F.2d 1082, 1086 (7th Cir. 1990)(court held plaintiff, who alleged it was injured by a town ordinance that required churches to obtain special use permits in

---

[4] In his February 1996 motion to dismiss opinion, Judge Andersen held Christ Center and Christian Bible Church had standing to challenge the special use permit requirements. *C.L.U.B.*, 1996 WL 89241, at *12-13. As noted above and in the Court's March 30 summary judgment opinion, the special use permit requirements have been found constitutional.

[5] Christ Center identified property in a M-1 zone and maintains it considered locating there, but the church did not purchase the property or even apply for a permit. (Pl. Aff. Ex. A-2 at ¶20.) Such allegations do not establish a "distinct and palpable" injury fairly traceable to Defendant. *Love Church*, 896 F.2d at 1086 (the Seventh Circuit denied standing to the individual churches and stressed the plaintiffs had never even applied for a special use permit).

all city districts, lacked standing because the church's "speculative claims cannot constitute distinct and palpable injury for purposes of standing."); *see also C.L.U.B.*, 1996 WL 89241, at *8-13. Thus, regarding the pre-February 2000 zoning scheme, C.L.U.B. and the individual Plaintiffs lack standing to allege monetary damage claims.

## CONCLUSION

For the above reasons, the Court DENIES Plaintiffs' Motion to Alter or Amend the Judgment of the Court.

**IT IS SO ORDERED.**
**DATED:** March 28, 2002.

_____
WILLIAM J. HIBBLER, DISTRICT JUDGE